**COURT OF APPEALS
DECISION
DATED AND FILED**

**December 29, 2022**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1226-FT**

STATE OF WISCONSIN

Cir. Ct. No. 2022ME10

**IN COURT OF APPEALS
DISTRICT III**

---

IN THE MATTER OF THE MENTAL COMMITMENT OF L. A. R.,

MARATHON COUNTY,

    PETITIONER-RESPONDENT,

 V.

L. A. R.,

    RESPONDENT-APPELLANT.

---

APPEAL from orders of the circuit court for Marathon County: LAMONT K. JACOBSON, Judge. *Affirmed*.

¶1 STARK, P.J.[1] Laura[2] appeals from orders for her WIS. STAT. ch. 51 commitment and the involuntary administration of medication and treatment.[3] She

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d) (2019-20). Further, this is an expedited appeal under WIS. STAT. RULE 809.17 (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

argues that Marathon County failed to provide clear and convincing evidence that she was dangerous under WIS. STAT. § 51.20(1)(a)2.d. We disagree and affirm the circuit court's orders.

## BACKGROUND

¶2 In January 2022, Laura was emergently detained based upon a substantial probability that she would harm herself or others. After a hearing, the circuit court found probable cause to believe that Laura met the standards for commitment and an involuntary medication order.

¶3 Three witnesses testified at Laura's final hearing: Dr. Marshall Bales; Dr. Dennis Elmergreen; and Lily, Laura's thirty-four-year-old daughter. Prior to the hearing, both doctors submitted reports to the circuit court based upon their interviews with Laura. Both doctors testified at the hearing that Laura suffered from bipolar disorder with manic features. The doctors also both testified that Laura was dangerous, that her judgment was impaired, and that her mental illness was treatable.

¶4 At the hearing, Doctor Bales opined, consistent with his report, that based upon a recent episode between Laura and Lily, Laura was dangerous under the second standard for dangerousness, WIS. STAT. § 51.20(1)(a)2.b., as she presented a substantial probability of harm to others or placed others in reasonable

---

[2] For ease of reading, we refer to the appellant and her family members in this confidential appeal using pseudonyms, rather than their initials.

[3] An order allowing for involuntary medication and treatment requires the existence of a valid commitment order. *See* WIS. STAT. § 51.61(1)(g)3. Laura does not raise any argument on appeal that is specific to her involuntary medication order, but if the commitment order were reversed, reversal of the associated involuntary medication order would also be required.

fear of violent behavior or physical harm. Bales testified, however, that Laura's "main dangerousness" was under the fourth standard, § 51.20(1)(a)2.d. As to this latter opinion, he stated that during his interview with Laura, she was defensive, angry, accusatory, hyperverbal, manic, and dysphoric. Bales further testified that Laura has suffered from bipolar disorder for over thirty years. He opined that Laura was unable to care for her own basic needs, based in part upon three episodes of Laura running out of gas in the bitter cold, because she thought she was driving an electric car, and her knocking at strangers' doors in the cold presenting as very vulnerable. Bales further based his opinion on the fact that Laura's home was in disarray, that she had tape on the electrical outlets, and that Laura was being maintained in her home through the assistance of both her husband (who made sure the bills were paid), and her daughters.

¶5 On cross-examination, Doctor Bales testified that he was unaware of Laura recently needing to be hospitalized for injuries to herself. Nevertheless, Bales testified that he believes Laura presents as "very, very vulnerable" and is unable to satisfy her basic needs based on her recent erratic behavior.

¶6 Doctor Elmergreen opined that during his interview with Laura, she "appeared to be quite delusional" and "actively psychotic." In his report and during his testimony, Elmergreen opined that Laura was dangerous under WIS. STAT. § 51.20(1)(a)2.b., noting that she would present a substantial probability of physical impairment or injury to herself or others due to her impaired judgment.

¶7 Lily expressed concern about Laura's mental health based on Laura's recent behavior. Specifically, Lily testified about an incident that occurred when she went to Laura's home in January 2022. During that visit, Laura stated she was worried that someone had broken into her home and that

Lily's aunt had shot and killed someone. According to Lily, Laura then accused her of working for the police, and Laura demanded that Lily take her to the police station to prove that Lily did not work for the police. Lily further explained that Laura cornered and pushed Lily against a wall, pulled Lily's hair, punched her a few times, and tried ripping Lily's glasses off, saying that she did not need glasses because Lily had LASIK surgery. Lily stated that when she ran to her car, Laura followed her while yelling at her, accusing her of stealing Laura's car, and hitting the car while asking to be let in. While Lily testified that she was not injured as a result of this incident, she stated that she fears her mother and that she is worried about her mother's own health and safety.

¶8    During her testimony, Lily also confirmed that Laura had recently run out of gas during severely cold weather on three separate occasions because Laura believed her car was electric. Lily also testified about other behavior she found concerning, such as when Laura started a fire in her own home and called the fire department, and when Laura flooded an entire room in her home by leaving the water running.

¶9    The circuit court found both that Laura was mentally ill, as she suffered from bipolar disorder, and that Laura's mental illness was treatable. The court concluded that despite the testimony regarding the incident involving Laura and Lily, Laura was not dangerous under WIS. STAT. § 51.20(1)(a)2.b. The court nevertheless found that Laura's aggressive behavior toward Lily could be considered by the court as evidence relevant to the other dangerousness standards. It then relied, in part, on Lily's testimony to conclude the County had proved by clear and convincing evidence that Laura was dangerous under § 51.20(1)(a)2.d. Specifically, the court stated that Laura's

> aggressive behavior toward … another individual, could carry over into aggressive behavior when cars run out of gas or the Fire Departments arrive, and I think then there is clear and convincing evidence that there is a substantial risk of danger to herself based upon all of those facts being considered together.

The court ordered Laura to be committed for six months and ordered an associated involuntary medication order. Laura now appeals.

## DISCUSSION

¶10 To commit an individual under WIS. STAT. ch. 51, the circuit court must find that the individual is mentally ill, a proper subject for treatment, and currently dangerous under one or more of five separate dangerousness standards. WIS. STAT. § 51.20(1)(a). Whether the County has met its burden to prove that these elements have been satisfied presents a mixed question of law and fact. *Waukesha County v. J.W.J.*, 2017 WI 57, ¶15, 375 Wis. 2d 542, 895 N.W.2d 783. "First, we will uphold a circuit court's findings of fact unless they are clearly erroneous." *Langlade County v. D.J.W.*, 2020 WI 41, ¶24, 391 Wis. 2d 231, 942 N.W.2d 277. "[A] finding of fact is clearly erroneous when 'it is against the great weight and clear preponderance of the evidence.'" *Phelps v. Physicians Ins. Co. of Wis.*, 2009 WI 74, ¶39, 319 Wis. 2d 1, 768 N.W.2d 615 (citation omitted). Second, we determine "[w]hether the facts satisfy the statutory standard[, which] is a question of law that we review de novo." *J.W.J.*, 375 Wis. 2d 542, ¶15.

¶11 On appeal, Laura does not challenge the sufficiency of the evidence supporting the circuit court's findings that she is mentally ill and that her illness is treatable. She does, however, argue that the court erred in concluding the County proved by clear and convincing evidence that she is dangerous under WIS. STAT.

5

§ 51.20(1)(a)2.d.[4]   That statute provides that an individual is dangerous if the person

> [e]vidences behavior manifested by recent acts or omissions that, due to mental illness, he or she is unable to satisfy basic needs for nourishment, medical care, shelter or safety without prompt and adequate treatment so that a substantial probability exists that death, serious physical injury, serious physical debilitation, or serious physical disease will imminently ensue unless the individual receives prompt and adequate treatment for this mental illness.

*Id.*

¶12   Laura argues the County failed to prove that "death, serious physical injury, serious physical debilitation, or serious physical disease" would ensue if she were not committed.  *See id.*  She asserts the evidence establishes only that she called the fire department on one occasion, flooded a room in her home by leaving the water running on another occasion, and ran out of gas in her car three times in cold weather.  Laura contends there is no evidence that any of these incidents caused her harm, nor are they situations that were deadly or had the potential to cause "death, serious physical injury, serious physical debilitation, or serious physical disease."  *See id.*

¶13   We conclude that the County met its burden to prove Laura is currently dangerous under WIS. STAT. § 51.20(1)(a)2.d.  Although Laura argues that neither she nor anyone else was injured by her actions, the commitment statute does not require that actual injury occur in order to prove current

---

[4] The circuit court found Laura dangerous under only WIS. STAT. § 51.20(1)(a)2.d. While the County argued at the commitment hearing that Laura met the elements for dangerousness under § 51.20(1)(a)2.b. and 2.c., the County does not renew these arguments on appeal, and we therefore do not address them.

dangerousness. Section 51.20(1)(a)2.d. requires only a substantial probability that physical harm will immediately ensue unless Laura receives prompt and adequate treatment. The record supports the circuit court's conclusion that due to her mental illness, Laura was a substantial risk of danger to herself without prompt and adequate treatment.

¶14 The circuit court noted that Laura had recently run out of gas in cold weather because she thought she was driving an electric car. The court commented that while one such occasion would not be unreasonable, three such occurrences did not make rational sense. Further, Dr. Bales' report stated that Laura was found "knock[ing] on strangers' doors and then accus[ing] them of lying about who they were." The court also noted Lily's testimony concerning both Laura's statement that she had started a fire in her home—which resulted in the fire department being called—and Laura had flooded a room in her home by leaving a faucet running. According to both doctors' testimony, these events occurred at a time when Laura was actively delusional. The evidence also showed that Laura's home was in disarray, and she required family assistance to live there. Finally, the court discussed Laura's physically aggressive conduct and delusional behavior toward Lily.

¶15 The above evidence supports the circuit court's conclusion that, as a result of her mental illness, Laura is unable to satisfy her basic needs for shelter and safety and that she is therefore currently dangerous as provided in WIS. STAT. § 51.20(1)(a)2.d. Accidentally starting a fire and flooding a room in her home while delusional placed Laura at risk of serious physical harm. Laura's impaired judgment interfered with her ability to operate a motor vehicle, causing her to repeatedly run out of gas. As the court noted, doing so on one occasion would not be concerning; however, doing so repeatedly in bitterly cold weather because she

incorrectly believed she was driving an electric car placed Laura at risk of physical injury. Laura's confrontational and delusional behavior to Lily and to strangers also placed Laura at risk of imminent physical harm. Further, the antagonistic and physically aggressive behavior Laura exhibited toward Lily while delusional reasonably led the court to conclude that Laura would be aggressive toward others, which may provoke harm to Laura when dealing with others such as fire department personnel or strangers.

¶16      Laura cites *Milwaukee County v. Cheri V.*, No. 2012AP1737, unpublished slip op. (WI App Dec. 18, 2012),[5] in support of her argument that the circuit court erred in concluding that she was dangerous because her behaviors would provoke another individual to harm her. She asserts *Cheri V.* held that evidence of behavior which might provoke another individual to harm the subject of the petition for commitment is not evidence of dangerousness. The facts in *Cheri V.*, however, are materially distinguishable from those in this case.

¶17      In *Cheri V.*, an individual sought treatment at a mental health facility, during which she became "very upset, very angry" and started confronting other patients and "finger pointing." *Id.*, ¶3. The nurse at the facility stated that as a result, she became concerned for Cheri's safety and that of the other patients and she put Cheri in restraints. *Id.* In reversing the circuit court's dangerousness finding and commitment order, we stated that "yelling at and pointing a finger at another person, irrespective of how dangerous that other person might be" is not evidence sufficient to meet any of the dangerousness standards "unless there is

---

[5] Unpublished opinions authored by a single judge and issued on or after July 1, 2009, may be cited for their persuasive value. *See* WIS. STAT. RULE 809.23(3)(b).

evidence that the subject of a potential commitment order is trying to goad that other person in order to have that person kill or harm the subject (as in 'suicide by cop')." *Id.*, ¶7.

¶18 In the instant action, however, the evidence shows that Laura's impaired judgment and delusional behavior caused her to do more than merely become very upset and "point fingers" at others. On more than one occasion, Laura became confrontational and belligerent when dealing with others. In addition, Laura approached random strangers' homes and accused whomever answered the door of lying to her. Of most concern to the circuit court was Laura's physical attack of Lily while Laura was upset and actively delusional. The court could reasonably conclude that Laura could place herself at risk of serious bodily harm by provoking a response from others to her aggressive and confrontational behavior when she was delusional, similar to the "goading" scenario discussed in *Cheri V. See id.*

¶19 The circuit court concluded that it was substantially probable that Laura would seriously harm herself without prompt and adequate treatment because she was unable to satisfy her basic needs for shelter and safety due to her mental illness. These findings are not clearly erroneous. The County met its burden of proving Laura was dangerous to herself under WIS. STAT. § 51.20(1)(a)2.d., and we therefore affirm.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.